ALEXANDER CORNEILSON vs. EASTERN RAILWAY CO. OF MINNESOTA.

Argued April 25, 1892. Decided May 23, 1892.

**Fellow Servants—Master not Negligent.**

> The plaintiff, a servant of a third party, was engaged, under the direc-
> tion of a servant of the defendant, in blasting rock. The two men pur-
> sued a method of withdrawing from the rock an unexploded charge of
> powder, which method proved to be dangerous. The two men worked
> together in this operation. *Held*, that the defendant was not responsible
> to the plaintiff for injury suffered by him, upon the ground that the act
> was dangerous.

Appeal by plaintiff, Alexander Corneilson, from an order of the
District Court of Pine county, *Crosby*, J., made July 26, 1890, re-
fusing his application for a new trial. On November 16, 1889; the
plaintiff, by the casualty described in the opinion, lost his eyesight.
He soon after commenced this action against the Eastern Railway
Company of Minnesota, claiming $20,200 damages. The trial was
had in April, 1890. After the evidence was all given, the court, on
motion of the defendant, directed the jury to return a verdict for de-
fendant on the ground that plaintiff and Bird were fellow servants.
If they were not fellow servants it was because plaintiff was not a
servant of defendant, and its duties to him were very different, and
no neglect of those duties had been shown.

*I. Grettum* and *John Jenswold, Jr.*, for appellant.

*James Spencer*, for respondent.

DICKINSON, J. The defendant is charged with negligence, by rea-
son of which the plaintiff is alleged to have suffered serious personal
injury. At the trial, and upon the evidence, the court directed a

verdict for the defendant. In reviewing the case, it will be necessary to refer with some particularity to the circumstances.

The plaintiff had been for some eight months prior to the injury in the employ of Ring & Tobin, as a laborer in the quarrying of stone, at a quarry owned or operated by them. There was a track of the defendant's railroad leading to the quarry. Ring & Tobin applied to the defendant to have a piece of side track put in there. To do this it was necessary that some rock be blasted out where the track was to be laid. It was agreed that the track should be constructed. Under the evidence, there is some doubt as to the relation of the parties to this work, and of that we shall treat more particularly hereafter. It is certain, however, that the defendant, by its engineer, made the survey of the premises, and determined upon the nature of the work to be done. It was agreed that Ring & Tobin should furnish such men and tools as might be needed for doing the work, and that the railroad company should pay Ring & Tobin therefor; and this was done. While operations were going on, one Bird, in the employ of the defendant as an assistant engineer, was present to see that the undertaking was properly accomplished. It may be assumed, also, as the plaintiff claims the fact to have been, that Bird exercised immediate control over the laborers in the prosecution of the work.

Pursuant to the agreement of Ring & Tobin to furnish such men and tools as might be needed, and at the request of Bird, they sent the plaintiff with some other men to do the blasting. In the course of that work a charge of powder which had been put into the rock for the purpose of blasting failed to explode, and the plaintiff proceeded to remove it by digging out the tamping of stone and sand which had been filled into the hole above the powder. This being a slow operation, as the plaintiff was doing it, Bird told him to drill it out, using water in connection with the operation.

The plaintiff took a drill of the size used in originally drilling the hole in the rock, which he held in the hole while Bird used a heavy hammer upon it to drill out the tamping. They poured some water into the hole, but were not careful, as it would seem, to use sufficient water, or to allow time for it to soak into the tamping in advance of the drill. By this use of the drill the powder was exploded, and the

plaintiff was injured. It appears from the evidence that the powder could not be exploded merely from the impact of the drill, but that the explosion must have been caused by a spark struck from the rock by the drill when it had penetrated through the tamping; the spark coming in contact with dry powder. If the powder had been wet, it would not have exploded. There was evidence that it was not safe to use a drill—especially so large a drill—in this way, because it so nearly filled the hole that there was too little room left for water, and the tempered steel of the drill was likely to strike spark from the rock, while a rod of untempered iron would not be likely to do so.

Allusion has been made to a matter of controversy, as to the relation of Ring & Tobin and the defendant, respectively, to this enterprise. It is a matter of doubt whether the former were to, and did, undertake the actual performance of the work, they taking charge of, and conducting the operations of, the laborers furnished by them, or whether they merely transferred to the defendant the use and control of their servants and tools. As already stated, we shall assume, in accordance with the plaintiff's claim, that the defendant controlled these operations, and that Ring & Tobin had nothing to do with the actual prosecution of the work. If the plaintiff were to be deemed to occupy the legal position of a servant of the defendant, he could not, upon the evidence, recover for the alleged negligence of Bird. The particulars concerning which negligence can be ascribed to Bird did not pertain to the absolute duty which the defendant owed to the plaintiff as its servant, but were rather matters incident to the mere performance of the servant's duties. The defendant, as master, was under no implied contract with the plaintiff that other servants, engaged in the same employment, should not adopt or pursue unsafe methods; and Bird, participating with the plaintiff in the work of removing the unexploded charge of powder, occupied the legal relation of a fellow servant with the plaintiff. The decisions of this court are quite conclusive as to this. *Brown* v. *Winona & St. P. R. Co.,* 27 Minn. 162, (6 N. W. Rep. 484;) *Brown* v. *Minneapolis & St. L. Ry. Co.,* 31 Minn. 553, (18 N. W. Rep. 834;) *Fraker* v. *St. Paul, M. & M. Ry. Co.,* 32 Minn. 54, (19 N. W. Rep. 349;) *Gonsior* v. *Min-*

*neapolis & St. L. Ry. Co.*, 36 Minn. 385, (31 N. W. Rep. 515;) *Olson* v. *St. Paul, M. & M. Ry. Co.*, 38 Minn. 117, (35 N. W. Rep. 866;) *Lindvall* v. *Woods*, 41 Minn. 212, (42 N. W. Rep. 1020;) *Fraser* v. *Red River Lumber Co.*, 45 Minn. 235, (47 N. W. Rep. 785.)

But it is claimed on the part of the plaintiff that the established principle of the law as to the liability of a common master to one of his servants for the negligence of a fellow servant is not applicable, for the reason, as is contended, that, while he was working under the direction and control of the defendant, he was really a servant of Ring & Tobin, and hence not in a legal sense a fellow servant with Bird, who was a servant of the defendant only. We need not stop to consider some questions which this theory of the case might suggest; for, if this be assumed to be the case, still the plaintiff is not entitled to recover. The general rule as to the responsibility of a master for the wrongful acts of his servants in the course and within the scope of the employment is not applicable here, if Bird is to be regarded as acting merely as a servant of the defendant, and not as a vice principal, for the reason that the plaintiff participated with him in the alleged negligent conduct. If the two men stood on the same plane, as servants of different masters, and if both ignorantly pursued together a dangerous method of accomplishing the work, we do not know of any legal principle which would subject the defendant to liability. Indeed, if the plaintiff can recover against the defendant as the master of Bird, why might not Bird, if he was injured by the same explosion, also recover against Ring & Tobin, as the responsible superiors of this plaintiff? There can be no claim of wanton or intentional wrong on the part of Bird. He voluntarily exposed himself to the very same risk from which the plaintiff suffered, evidently being unaware of the danger which the result made apparent. It seems to be obvious that, since the plaintiff actively participated with Bird in doing the very thing which is alleged to have been dangerous, the defendant cannot be held responsible to him, unless it can be said that the defendant owed him some direct, absolute duty in the premises, which it violated. When, for this purpose, it is said that Bird was the *representative* of the defendant, with authority to control and direct the plaintiff in his work,

we come back to the point that what was here done was what belongs to an operative, and not to the master; so that, in the things complained of, Bird occupied the same position towards the plaintiff that any mere laborer employed by the defendant would have done.

The case did not show that the defendant was negligent in having employed or retained Bird in its service. There was no proof of his general incompetency.

Order affirmed.

(Opinion published 52 N. W. Rep. 224.)