CHARLES N. LING *vs.* ST. PAUL, MINNEAPOLIS & MANITOBA RAIL-
WAY CO.

*Argued May 24, 1892. Decided June 13, 1892.*

**Negligence of Fellow Servant.**

    A master *held* not responsible to a servant for the act of a fellow serv-
ant, in negligently selecting a defective instrument—an iron hook—to
which to attach a pulley to raise a heavy weight in a boiler shop; that
being a proper detail of the work in which the servants were engaged.

Appeal by plaintiff, Charles N. Ling, from an order of the District
Court of Clay County, *Searle*, J., made December 8, 1891, denying his
motion for a new trial.

The issues in this action were brought to trial on June 16, 1891.
At a former trial had in June, 1890, plaintiff had a verdict for $12,-
000. The defendant moved for a new trial, which was refused on the
condition that plaintiff stipulate to reduce the verdict to $4,000.
This he refused to do, and an order was entered granting a new trial.
The facts are stated in the opinion of the court.

*Peterson & Torgerson*, for appellant.

Harty, the foreman of the boiler shop, and plaintiff, were not fel-
low servants, so as to exempt the defendant from liability for the in-
jury plaintiff sustained, by his negligence in furnishing a defective
hook. *Drymala* v. *Thompson*, 26 Minn. 40; *Kelly* v. *Erie Tel. & T.
Co.*, 34 Minn. 321; *Telander* v. *Sunlin*, 44 Fed. Rep. 564; *Lund* v.
*Hersey Lumber Co.*, 41 Fed. Rep. 202; *Brown* v. *Gilchrist*, 80 Mich.
56; *Benzing* v. *Steinway & Sons*, 101 N. Y. 547; *Kranz* v. *Long
Island Ry. Co.*, 123 N. Y. 1; *Anderson* v. *Minnesota & N. W. R. Co.*,
39 Minn. 523; *Tierney* v. *Minneapolis & St. L. Ry. Co.*, 33 Minn.
311; *Chicago, K. & W. R. Co.* v. *Blevins*, 46 Kan. 370; *Lindvall* v.
*Woods*, 41 Minn. 212; *Olson* v. *St. Paul, M. & M. Ry. Co.*, 38 Minn.
117; *Hefferen* v. *Northern Pac. R. Co.*, 45 Minn. 471.

*W. E. Dodge* and *M. D. Grover*, for respondent.

Plaintiff's companions in the boiler shop all served under one mas-
ter, worked under one control, received compensation from the same

common source, and were engaged in the same general business. They were, therefore, fellow servants, who upon accepting their employment took the risk of each others' negligence.    Thompson, Neg. 1026; *Foster* v. *Minnesota Cent. Ry. Co.*, 14 Minn. 360, (Gil. 277;) *McKinnon* v. *Norcross*, 148 Mass. 533; *McAndrews* v. *Burns*, 39 N. J. Law, 117; *O'Connell* v. *Baltimore & O. R. Co.*, 20 Md. 212; *Columbus & I. C. Ry. Co.* v. *Arnold*, 31 Ind. 174; *Lehigh Valley Coal Co.* v. *Jones*, 86 Pa. St. 432; *Lawler* v. *Androscoggin R. Co.*, 62 Me. 463.

The master left to the discretion of the servants the method to be pursued and the means to be employed in performing their duty, furnishing for such servants plenty of material, tools, and implements, and a competent blacksmith to manufacture such as were not at hand, or to repair such as were unfit for use.    If there was any negligence in selecting or furnishing the hook, it was the negligence of the plaintiff's fellow servants.    *Hefferen* v. *Northern Pac. R. Co.*, 45 Minn. 471; *Fraser* v. *Red River Lumber Co.*, 45 Minn. 235; *Daley* v. *Boston & Albany R. Co.*, 147 Mass. 101; *McDermott* v. *Boston*, 133 Mass. 349; *Johnson* v. *Boston Tow-Boat Co.*, 135 Mass. 209; *McGee* v. *Boston Cordage Co.*, 139 Mass. 445; *Armour* v. *Hahn*, 111 U. S. 313; *Lindvall* v. *Woods*, 41 Minn. 212.


DICKINSON, J.    The circumstances of the injury suffered by the plaintiff, for which a recovery is sought in this action, may be thus stated in brief:

The plaintiff was in the service of the defendant, as a "boiler maker's helper," or assistant, at its repair shops at Barnesville, consisting, in part, of a machine shop, boiler shop, and blacksmith shop. Each shop was in charge of a foreman, and there was a general foreman, over the whole.    A locomotive upon which repairs were being made was standing in one of these shops, over a pit provided for convenience in working under locomotives.    A flue sheet was to be put in place in the front end of the fire box.    It is a sheet of iron weighing about three hundred and fifty pounds.    There is no uniform method of lifting the flue sheet into its proper place.    It is sometimes raised by hand, but the more common way is to use the mechanical

means of a pulley, a block and tackle, this being suspended or fixed in position for use wherever the circumstances may make most convenient. An ordinary and proper method is to take a hook made of five-eighths inch iron, bent in the form of an S, which is inserted in a hole in the crown sheet, (the top of the fire box,) and fastened by a rod running through the upper loop of the hook. The block or pulley is then hooked on the lower loop or bend of the S. hook. Hooks of a different shape and eye bolts are likewise used in a similar manner.

The plaintiff was called by the foreman to go from another place in the shop where he was working, to assist in raising the flue sheet into its place. He went into the fire box, and found the apparatus already adjusted for this purpose. The block had been fastened to the crown sheet by a hook. A boiler maker named Brennan was in the fire box, and two boiler makers' helpers, besides the plaintiff, were at hand. The plaintiff, standing on some planks laid across the pit under the fire box, proceeded, by means of the block and tackle, to raise the flue sheet. The hook to which the apparatus was attached broke, causing the flue sheet to fall, and thereby the plaintiff was injured. It was then discovered that the hook had been previously cracked, or broken partly through, the defect being such as would have been obvious upon examination. The sole question is whether by reason of this defect in the hook the defendant is responsible. A verdict was returned for the defendant by direction of the court.

There was little, if any, real controversy as to the facts, and the court was right in directing the verdict for the defendant. Hooks, such as were used on this occasion, and such as were commonly used for similar purposes, were to be found lying around the shop, as the plaintiff admits, and were procured or selected by foremen or laborers as their work might require; or, if necessary, they would have one made by the blacksmith, or the boiler maker would make one himself. A hook suitable for such purposes would be formed by bending an iron rod into the desired shape, and iron rods were provided which might be used for such purposes. It was the simplest kind of a device, or adaptation of means, for performing the work which constituted the ordinary mechanical employment of these

men. Such hooks were not provided for that particular purpose. It is very apparent from the case that when, for this or like purposes, it became desirable or necessary for the boiler makers and their assistants to resort to the mechanical aid of a pulley, it was a part of their duty to consider where, under the circumstances relating to its use, they would fasten or anchor the pulley, and the means by which they would do it. To illustrate, it was not the legal duty of the defendant towards these mechanics, as their master, to direct them whether to make their pulley fast to the crown sheet over the fire box, or to use a timber for that purpose, or as to whether they should use a hook, of one form or another, an eye bolt, or some other means of making it fast. It was not a part of the absolute duty of the master to provide the particular simple instrument or thing which should be used for such a purpose. That was a part of the very duty which the mechanics were to themselves perform. The defendant provided the means which might be necessary to enable the mechanics to do what was thus required of them. If there was not at hand such a thing as might be necessary to fasten the pulley in position for use, they could have it made by the blacksmith. But the evidence shows conclusively that there were enough hooks lying about the shop fit for this purpose, which might have been selected and used. The accident occurred from the fact that whoever procured this hook neglected to observe, as he might have done, that it was broken and unfit for use. It does not appear who did this. There is no reason to presume, even as a matter of fact, that the foreman did it, rather than the boiler maker Brennan, or one of his helpers. But, while much attention is given to this matter in the argument of the appellant, we deem it to be of no consequence whether the boiler maker or the foreman was the person who negligently selected this particular hook and put it in position for use. In either case, this was a part, a mere detail, of the work which these mechanics were employed to perform, and, whether done by the foreman, boiler maker, or a helper, whatever negligence there may have been in selecting the broken hook was the negligence of a fellow servant, and the plaintiff cannot recover from this defendant.

The case is clearly determined by numerous decisions of this court: *Brown* v. *Winona & St. P. R. Co.*, 27 Minn. 162, (6 N. W. Rep. 484;) *Fraker* v. *St. Paul, M. & M. Ry. Co.*, 32 Minn. 54, (19 N. W. Rep. 349;) *Lindvall* v. *Woods*, 41 Minn. 212, (42 N. W. Rep. 1020;) *Fraser* v. *Red River Lumber Co.*, 45 Minn. 235, (47 N. W. Rep. 785;) *Hefferen* v. *Northern Pac. R. Co.*, 45 Minn. 471, (48 N. W. Rep. 1, 526;) *Corneilson* v. *Eastern Railway Co.*, 50 Minn. 23, (52 N. W. Rep. 224.)

Order affirmed.

(Opinion published 52 N. W. Rep. 378.)