BURKE et al. v. ANDERSON.

(Circuit Court of Appeals, Seventh Circuit. October 7, 1895.)

No. 194.

MASTER AND SERVANT—LIABILITY OF MASTER—USE OF EXPLOSIVES.

One M. was a contractor, engaged in making a roadbed for a railroad, and one J. had sole charge of the work for him as general manager and superintendent. The work was carried on by blasting the frozen ground with dynamite and other explosives, and afterwards breaking it up with picks, J. having personal charge of the blasting. Plaintiff, a common laborer, unfamiliar with the use of explosives, was hired by J., and set to work, digging with a pick, at a spot where the blasting had been done the

day before, without warning of possible danger. Plaintiff was injured by an explosion caused by striking with his pick a piece of dynamite remaining from the blast, which was found to have been negligently conducted. *Held*, that as M. had created the risk due to the presence of explosives for his own purposes, and was bound not only to exercise the utmost care and every available precaution against possible injury to the workmen, but to give them warning of the risk, and as plaintiff was ignorant of the risk when he undertook the work of digging, M. was liable to plaintiff for the injury suffered.

In Error to the Circuit Court of the United States for the Western District of Wisconsin.

This was an action by T. Knut Anderson against Matthew C. Burke and John Burke for personal injuries. The plaintiff recovered judgment in the circuit court. Defendants bring error. Affirmed.

This action is founded upon alleged negligence of the defendants, who are the plaintiffs in error, whereby the plaintiff below sustained serious personal injuries from an explosion of dynamite or some other explosive material, alleged to have been left in the ground by the defendants after blasting operations, and at a place where they set the defendant at work without warning or knowledge of the danger; the explosion resulting, as inferred, by a blow struck with the pick used by the plaintiff, in excavating, under the direction of the defendants. Matthew C. Burke was a contractor, engaged in making the roadbed for a railroad near West Duluth, Minn., in the winter of 1893. His codefendant, John Burke, had sole charge of the work for him, or, as stated in their joint answer, "was general manager and superintendent of said work, and had charge of said work under and for" Matthew C. Burke. The plaintiff was "a common laboring man," 39 years of age, and had commenced work for the defendants, as such, only three days before the accident. The ground was frozen, and it was found necessary to use explosives in breaking it up preparatory to the work of excavation. Holes were drilled down to the proposed line of grade, charged with either dynamite or black powder, or both, and fired by a fuse or by a battery according to circumstances. The plaintiff was employed in digging, and had no part in or connection with the blasting, and it appears that he had never before worked where dynamite was used, and had no acquaintance with its use. The blasting operations were conducted by John Burke, assisted by a man called the "Frenchman"; and, on the afternoon before the accident, they had blasted in advance of the workmen at the place where the injury occurred. On the following morning, February 17th, the plaintiff was sent by John Burke, with other laborers, and without any warning or knowledge of danger, to excavate the ground as it was left after blasting, the plaintiff working with a pick. Within a few moments after commencing work, and while striking with his pick into the bank, an explosion occurred, of dynamite or some explosive which had been left in the ground, and the plaintiff was seriously injured in his eyes, face, and arms.

The plaintiff asserts negligence on the part of the defendants (1) in failure to cause the explosion or withdrawal of the entire charge used in the blasting before commencing the work of picking and digging; (2) in failure to examine sufficiently the blasting holes after the explosion, before ordering the commencement of work; (3) in ordering and placing the plaintiff to pick in the bottom of the unexploded hole, without warning him of the danger to be apprehended in the work. On the part of the defendant it is claimed that the injury to the plaintiff was the result of unavoidable accident, and not due to negligence of any person; that, after the holes were drilled, they were all "squibbed" by exploding a small charge of dynamite at the bottom, to make a chamber for the blasting charge, then loaded with dynamite and black powder, connected with the battery, and fired; that the appearance of the ground indicated that there was complete discharge of the explosives, but "in fact a part of a stick of dynamite, for some reason, failed to explode, and was among the dirt" into which the plaintiff struck his pick. Instructions

were requested in behalf of the defendant Matthew C. Burke (1) directing verdict in his favor, upon the theory that no negligence was shown against him; (2) directing that he is not liable "for anything that the defendant John Burke did or failed to do in connection with the work of charging or unloading or scraping the same out, if the jury find the holes in question were scraped out as claimed by plaintiff." Error is assigned upon the refusal of the court to so instruct, and also upon the following portion of the instructions given to the jury: "If the accident came to the plaintiff, and he sustained this substantial damage, which he has testified to, through the fault of John Burke in the management of that work, without fault on the part of the plaintiff, then I have no reason to doubt that not only John Burke would be liable, but that his codefendant, Matthew Burke, would also be liable." A verdict was rendered in favor of the plaintiff for $4,000. Sundry errors are assigned upon rulings admitting testimony in behalf of the plaintiff tending to show (1) attempt and failure to fire the other holes with a battery; (2) that the battery had missed fire before the accident; (3) that sticks of unexploded dynamite had been left by their blasting operations previous to the occasion in controversy; (4) that in the blasting in question it was attempted to fire with a battery, but the two lower holes did not explode; (5) that the battery had missed fire on previous occasions. Error is further assigned upon a ruling which excluded the defendant John Burke from answering whether or not, from what he knew of the explosion and the appearance of the ground, "he had then or has now any doubt but that all those holes exploded."

William G. Challis and Draper, Davis & Hollister, for plaintiffs in error.

T. M. Thorsen and John Jenswold, Jr., for defendant in error.

Before WOODS and JENKINS, Circuit Judges, and SEAMAN, District Judge.

SEAMAN, District Judge, after stating the facts as above, delivered the opinion of the court.

The question in this case upon which the liability of the principal defendant, Matthew C. Burke, depends, is this: What is the rule of care to be applied to an employer of labor who uses explosives or other dangerous means in the prosecution of the work in which the laborer is engaged? Matthew C. Burke was the employer, as contractor for the excavation and construction of the bed for a railroad in the winter season, and dynamite and other explosives were used for blasting the frozen ground, in advance of the laborers who were engaged in excavating. He was not personally attending to the operations, but they were supervised and managed by his codefendant, John Burke, whom he employed for that purpose, who personally conducted the advance blasting (assisted by a special workman), and also personally directed the force of laborers in the work of excavation which followed. The plaintiff below was a common laborer in this force, had entered upon the work only three days before, and had no experience with the use of dynamite, or work where it was used. The blasting was completed on the previous day, and the plaintiff had no part therein; but he was sent by John Burke to work in the ground where the explosives had been used, and there received his injury, apparently caused by some portion of the explosives which had been left unexploded through the blasting operation. The liability of Matthew C. Burke is asserted on the doctrine of respondeat superior,

and based upon the alleged negligence of John Burke (1) in so carrying on the blasting, or using the dynamite and powder, that an unexploded portion was left in the ground; and (2) in sending the plaintiff into the place where this danger lurked, without warning of its existence and without sufficient precautions to guard against injury. The counter proposition, on which Matthew C. Burke claims exemption from any liability, is substantially this: That the work of blasting and removing any unexploded charge was "not the personal duty of the master, but only the work of an operative," and consequently any negligence therein of John Burke was in the character of fellow servant, a risk assumed by the plaintiff, which precludes recovery against the master.

This conflict must be resolved in accordance with the general rule, which is clearly pronounced in the recent decision by the supreme court in Mather v. Rillston, 156 U. S. 391, 15 Sup. Ct. 464. There the plaintiff was without experience in mining or in the use of explosives, and was employed in operating the drums in the engine house of a mine. Explosives for mining purposes had recently been stored in the engine house, and the heat and the jarring incident to that place were a constant source of danger, of the nature of which the plaintiff was not well advised. An explosion occurred, the cause of which was not definitely shown, and the plaintiff was injured. His action was against the operators of the mine for negligence. The instructions of the court below left it to the jury to decide whether the defendants were negligent in so using and storing the exploding caps and material, and in failing to give the injured employé due warning of their dangerous character, and their verdict was against the defendants upon the issue thus presented. In affirming the judgment, the court, speaking unanimously, through Mr. Justice Field, states the doctrine applicable here:

"All occupations producing articles or works of necessity, utility, or convenience may undoubtedly be carried on, and competent persons, familiar with the business, and having sufficient skill therein, may properly be employed upon them; but in such cases, where the occupation is attended with danger to life, body, or limb, it is incumbent on the promoters thereof and the employers of others thereon to take all reasonable and needed precautions to secure safety to the persons engaged in their prosecution; and for any negligence in this respect, from which injury follows to the persons engaged, the promoters or the employers may be held responsible and mulcted to the extent of the injury inflicted. The explosive nature of the materials used in this case * * * was well known to the employers, and was a continuing admonition to them to take every precaution to guard against explosions. Occupations, however important, which cannot be conducted without necessary danger to life, body, or limb, should not be prosecuted at all without all reasonable precautions against such dangers afforded by science. The necessary danger attending them should operate as a prohibition to their pursuit without such safeguards. * * * If an occupation attended with danger can be prosecuted by proper precautions without fatal results, such precautions must be taken by the promoters of the pursuit or employers of laborers thereon. Liability for injuries following a disregard of such precautions will otherwise be incurred, and this fact should not be lost sight of. So, too, if persons engaged in dangerous occupations are not informed of the accompanying dangers, by the promoters thereof, or by the employers of laborers thereon, and such laborers remain in ignorance of the dangers and suffer in consequence, the employers will also be chargeable for the injuries sustained."

And the same doctrine is asserted in the opinion of Judge Jenkins for this court, in Goodlander Mill Co. v. Standard Oil Co., 11 C. C. A. 253, 63 Fed. 400, as follows:

"One who uses a dangerous agency does so at his peril, and must respond to the injuries thereby occasioned, not caused by extraordinary natural occurrences, or by the interposition of strangers."

The case of Fletcher v. Rylands, L. R. 1 Exch. 265, affirmed L. R. 3 H. L. 330, there cited, is well in point.

In the case at bar the only explicable cause of injury to the plaintiff was the presence in the ground of some remnant of the explosives which had been employed in blasting. The danger was not inherent in his work; was not one to be anticipated in the labor with pick and spade in a gravel cut for which he was hired; it was not of natural or purely accidental origin, but was produced by the act or requirement of the master in using a dangerous agency to advance his undertaking. Except for the explosive materials carried there for the master's purposes, the plaintiff could have worked safely in the place to which he was assigned. The testimony is undisputed that he had engaged in the work only three days before, had no experience in or knowledge of the use or danger of explosives thus employed, and had no information or suspicion that danger was incurred by digging in this ground. He obeyed the express order of the superintendent to enter and work there, relying, as he had a right to rely, upon the implied assurance of the master that the place was reasonably safe; that there was no other danger there "than such as was obvious and necessary." Railroad Co. v. Baugh, 149 U. S. 368, 386, 13 Sup. Ct. 914. The master provides the place for his servant to work, and, if his acts create special danger, he is not alone chargeable with the positive duty to exercise the utmost care and every available precaution against possible injury to those who are to work there; but, if danger impends notwithstanding the precautions taken, he is further obligated to give due information and timely warning to those in his service who are ignorant of its extent before calling upon them to incur the risk.

In respect of the employment of the plaintiff and the directions for his work, it is unquestionable and conceded that the superintendent represented the master as vice principal. In the same relation he is chargeable with knowledge of the danger in using the explosives, and with the duty to protect employés and notify them of risk. If the plaintiff was not informed of the peril which compliance with the order involved, or it was not clearly apparent, the risk thus created cannot be held to have been contemplated in the service in which he engaged, and therefore it was not one assumed by him in his employment.

The instructions requested on behalf of the principal defendant, and the theory of the whole defense as well, rest upon the claim that the operation of blasting was common labor, and not the work of a superintendent or vice principal; that its performance by this superintendent was in the character of fellow servant, and the master was not liable for any neglect therein beyond the exercise of ordinary care in selecting his servants. In the same connection it is argued that the

use and care of the explosives was not a personal duty of the master. Whether these claims could be maintained by the master in any case in which he brings into his work the dangerous means which produce injury, and whether the rule of strict care does not impose a positive obligation which he cannot evade by delegating the performance, are questions of interest, but they do not require consideration here. It is sufficient that the risk was created by the master or for his purposes; that there is legitimate finding by the jury of negligence, on the part of those engaged in the performance, causing the injury; and, finally, that the plaintiff was ignorant of the risk, and had not assumed it. The doctrine which exempts the master from liability arising out of the negligence of fellow servants is based upon the assumption by the servant of the ordinary risks of his employment, in which the negligence of fellow servants is included, but it has no application to risks which are not contemplated by him in entering upon the service (Railroad Co. v. Hambly, 154 U. S. 349, 357, 14 Sup. Ct. 983), and certainly cannot govern for this extraordinary risk interposed by the master without warning.

The cases which are cited in support of the defendant's contention are clearly distinguishable in their facts, and are not inconsistent with the rule applied here. In City of Minneapolis v. Lundin, 7 C. C. A. 344, 58 Fed. 525, the injured servant was a blaster hired for and engaged in the use of the explosives, and acquainted with the danger incurred. In Corneilson v. Railway Co., 50 Minn. 23, 52 N. W. 224, the plaintiff was directly engaged in the blasting in which he received his injury and had experience in the work. Neither case presents the want of knowledge or notice shown by this plaintiff. The instructions given to the jury were in accord with these views; those requested on behalf of the defendant were antagonistic, and properly refused. The several assignments of error relating to the instructions must therefore be overruled. The other assignments are all founded upon rulings in the admission and rejection of testimony, but they present no substantial error and no question requiring discussion. The judgment is affirmed.