# ODILE FRANCOEUR v. GRIBBEN LUMBER COMPANY.[1]

July 14, 1911.

Nos. 17,158—(215).

**Incompetent servant — question for jury.**

In this, a personal injury case, *held,* that whether or not the master negligently employed incompetent servants was, under the evidence, a question for the jury.

Action in the district court for Ramsey county by the administratrix of the estate of Amable A. Francoeur, deceased, to recover $5,000 for the death of her intestate. The answer admitted that on September 13, 1909, A. A. Francoeur was removing boards from a pile of lumber in the yard of defendant and that while so engaged some boards fell upon him, inflicting injuries which resulted in his death; that at the time of his death he was an able-bodied man and was earning two dollars per day; that he left him surviving his widow and the children mentioned in the complaint, and that during his lifetime he contributed to the support of wife and children, but denied that plaintiff or next of kin of A. A. Francoeur sustained damages in any amount by reason of any act or omission on the part of defendant. The case was tried before Bunn, J., and a jury which returned a verdict in favor of plaintiff for $5,000. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*P. J. McLaughlin,* for appellant.

*How, Butler & Mitchell,* for respondent.

SIMPSON, J.

While Amable A. Francoeur was engaged in work for the defendant, a pile of boards fell over on him, causing his death. The plaintiff, as administratrix, brings this action to recover damages,

---

[1] Reported in 132 N. W. 199.

claiming that the defendant failed to properly supervise the piling of lumber in its shed; that these boards fell because they were improperly and negligently piled; that the employees, Carlson and Anderson, who had so negligently piled the boards, were, within the knowledge of defendant, wholly unfit and incompetent to do this work and make the piles reasonably safe; and that the deceased was required to work near the dangerous pile without warning of the danger. The evidence introduced showed that Carlson, a man thirty-four years of age, had recently arrived from Sweden, where he had been a storekeeper. He had worked for a short time as a laborer in sewer construction prior to his employment by the defendant, but had had no previous experience in piling lumber. He had worked for the defendant piling lumber for three months prior to the accident. Anderson was hired to help Carlson do this work about two months before the accident. He was nineteen years of age, had previously worked on a farm and with a railroad section crew, but had never had any prior experience in piling lumber. Neither of these men were ever given any instructions in reference to the manner in which the lumber should be piled. Hanson, the general foreman, from time to time directed them where to pile the lumber.

Different varieties of lumber were piled in separate piles closely adjoining each other. The piles were not left of the same height, and one pile might at any time be removed, leaving the adjoining pile standing. When a pile was so left, in order that there should be no danger of a portion of it falling, it was necessary that the boards should be keyed to each other or tied together in some way. This could be done, either by means of crosspieces, or by overlapping the boards in the pile. The usual method in piling kiln-dried lumber is to tie the boards together by overlapping. The boards that fell in this case were piled by Carlson and Anderson, one board wide, to a height of eleven feet. The boards in this tier were oak, varying in width from twelve to sixteen inches, and were fifteen feet in length. On one side of this single tier pile of oak boards was a larger pile of oak boards eleven feet high. These boards were sixteen feet long, and were piled by Carlson and Anderson at the

same time the single tier pile was being made; that is, the two piles were carried up together; the fifteen-foot boards being placed in one pile and the sixteen-foot boards in the other. In piling these two piles the single tier pile was not keyed or tied in any way to the larger pile, although this might have been done by overlapping the boards in the two piles. On the other side of the single tier pile, when first laid up, was a pile of birch boards about eight feet high, which pile was later lowered by the use of boards therefrom until it was about four feet high. While the deceased was standing on this birch pile, taking boards from it, the single tier of oak boards tipped over, fell on him, and caused injuries resulting in his death.

Upon this evidence the issue was submitted to the jury of whether the defendant was negligent in employing these men to pile lumber and permitting them to continue at such work without giving them instructions as to the way the lumber should be piled to make it sufficiently secure, so as not to expose the men working about it to the danger of its falling and injuring them; the defendant knowing that these men had no prior experience in piling lumber. The jury returned a verdict in favor of the plaintiff. From an order denying its motion for new trial, the defendant appeals.

The question chiefly discussed is whether, under the evidence as above stated, there was a question for the jury. The defendant claims that the evidence fails to show that the employees who piled this lumber were incompetent, or known to the defendant to be incompetent; the specific claims of the defendant being that the piling of lumber is a matter so simple that men of ordinary intelligence, without previous experience in piling lumber, were competent to engage in that work without instruction, and that in any event, before piling the lumber which fell, Carlson had been piling lumber in the defendant's shed for over two months and Anderson for nearly two months and that they had thereby acquired experience and were competent.

We are of the opinion that these questions cannot be disposed of as a matter of law, and that they were properly questions of fact for the jury. While piling boards is a simple matter, and to some extent readily understood, it cannot be said that the proper method

of piling boards to the height to which these piles were carried, so as to make the piles secure, and the necessity of secure piling in a shed like the one here involved, are matters so generally understood that a person of ordinary intelligence,. without prior experience therein, and without any instruction, would appreciate the importance of secure piling and be competent to do the work properly. The very simplicity of the process of laying up a few boards might well make less obvious the danger from a high pile insecurely made, and the resulting necessity in such case of tying an outer tier of boards to the balance of the pile. Nor does the fact that these men had worked in this shed for some time before this particular pile was made show that they had become competent by reason of such experience. The boards piled generally in this shed were of varying widths. In the ordinary operation of laying up a pile of lumber, because of such varying widths, the boards would overlap and make the piles secure. There is nothing to show that the importance or necessity of this overlapping was known to Carlson and Anderson.

Under the circumstances, it became a question for the jury whether the insecure and unsafe pile was due to Carlson's and Anderson's negligence, or to their lack of knowledge as to the proper manner of doing the work, and the finding that they were incompetent is sustained by evidence. Kronzer v. Spencer-Kellogg Co. 109 Minn. 392, 124 N. W. 6.

There is evidence tending to show that the attention of the defendant, through its general foreman, was called to the insecure condition of piles of lumber in the shed a week before the accident. He knew of the inexperience of these men when he hired them, and that he had given them no directions as to the secure piling of the lumber. He knew other employees would be required to work in the vicinity of lumber piles made by them, and that such other employees would be exposed to danger if the piles were insecurely made. The evidence sustains the finding that the defendant had notice and knowledge of the incompetency of these men, and that it was negligent in employing them to pile lumber in its sheds under the conditions there prevailing.

There is no claim made, and none could be made under the evidence, that the deceased might have, in the exercise of care, discovered that the single tier pile of boards was not tied to the adjoining pile of oak boards. After the piles were completed, the position of a post in front of the single tier pile and immediately at the side of the front end of the larger pile made it difficult, if not impossible, to see whether the fifteen-foot boards were overlapped with the boards in a larger pile.

The question of whether the deceased was a foreman having supervision of Carlson and Anderson was fairly submitted to the jury, and the finding adverse to the defendant is sustained by the evidence.

The verdict is not excessive. The other points urged by appellant do not show any error in the trial.

Affirmed.

BUNN, J., took no part.